Hovhannes Bayburtski
CA Bar No. 348506
Vichi Law, PC
12400 Ventura Blvd, #411
Studio City, CA 91604
Telephone:(310)901-9112
Email: hovbaylaw@gmail.com; globallawusa@gmail.com
Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Kai Wang
Petitioner,
v.
James JANECHA, the Warden of the Adelanto ICE Processing Center;

Jaime RIOS, Field Office Director, Adelanto, Office of Detention and Removal, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security;

Todd M. LYONS, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security;

Markwayne MULLIN, in his Official Capacity,
Secretary, U.S. Department of Homeland Security; and

Todd BLANCHE, in his Official Capacity, Acting Attorney General of the United States.
Respondents

NO.

**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Challenge to Unlawful Incarceration Under Color of Immigration Detention Statutes; Request for Declaratory and Injunctive Relief

**INTRODUCTION**

1. Petitioner, Kai Wang, has been civilly imprisoned by U.S. Immigration and Customs Enforcement (ICE) at the Adelanto ICE Processing Center. On August 18, 2026, when he reported as directed to the ICE office in downtown Los Angeles, he was arrested by ICE. Mr. Wang entered the United States on or about July 24, 2024. He was detained by ICE officers for several days and was then released from custody with instructions to report to ICE. Mr. Wang filed a defensive application for asylum, withholding of removal, and protection under the Convention Against Torture in his removal proceedings, completed his biometrics on December 9, 2024, and appeared at every hearing. His case remains pending, and his individual merits hearing is scheduled for March 9, 2028, before Immigration Judge Timothy R. Everett.

2. Kai Wang's current detention may be permitted under the Constitution and the Immigration and Nationality Act (INA) only if Respondents can demonstrate before a neutral decision-maker that he is a flight risk or danger to the community, or if his removal is imminent. Kai Wang is not a flight risk or danger. Thus, Kai Wang's continued detention without a hearing before a neutral decision maker violates his rights under the INA and the Due Process Clause of the Fifth Amendment. U.S. Const. amend. V.

3. This Court should issue a writ of Habeas Corpus and determine that Kai Wang is entitled to immediate release under reasonable conditions and pending further order of the Court.

4. Alternatively, this Court should order Kai Wang's release unless he receives a hearing before a neutral arbiter where: (1) to justify his continued detention, the government bears the burden to establish by clear and convincing evidence that Kai Wang is a danger or flight risk; and (2) if the government cannot meet its burden, Kai Wang must be ordered released on reasonable conditions, taking into account his ability to pay bond.

**CUSTODY**

5. Kai Wang is currently in the custody of Adelanto ICE Processing Center at 10400 Rancho Road, Adelanto, CA 92301. Kai Wang is therefore in "'custody' of [the DHS] within the meaning of the habeas corpus statute." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963).

**JURISDICTION**

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1651 (All Writs Act), 28 U.S.C. §§ 2201–02 (Declaratory Judgment Act), 28 U.S.C. § 2241 (habeas corpus), U.S. Const. article I, § 9, cl. 2 (the Suspension Clause), U.S. Const., amend IV and V, and 5 U.S.C. §§ 701-706 (Administrative Procedure Act).

**VENUE**

7. Venue is proper in this district and division pursuant to 28 U.S.C. § 2241(a) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner is physically detained within this district.

**REQUIREMENTS OF 28 USC § 2243**

8. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to Respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Court must require Respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id*. (emphasis added).

9. Courts have long recognized the significance of the habeas statute in Protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

10. Habeas corpus must remain a swift remedy. Importantly, "the statute itself directs courts to give petitions for habeas corpus 'special, preferential consideration to ensure expeditious hearing and determination.'" *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (internal citations omitted). The Ninth Circuit warned against any action creating the perception "that courts are more concerned with efficient trial management than with the vindication of constitutional rights." *Id*.

**EXHAUSTION**

11. For habeas claims, exhaustion of administrative remedies is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id*. (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted)). Kai Wang asserts that exhaustion should be waived because administrative remedies are (1) futile and (2) his continued detention results in irreparable harm.

12. It would be futile for Kai Wang to seek a bond hearing from an Immigration Judge. His request would be summarily denied based on the current interpretation of the BIA's recent decisions in *Matter of Q. Li*, 29 I&N Dec. 66 (B.I.A. 2025) and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

13. Further, no statutory exhaustion requirements apply to Kai Wang's claim of unlawful custody in violation of his due process rights, and there are no administrative remedies that he needs to exhaust. *Reno v Amer.-Arab Anti-Discrim. Comm*., 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (finding exhaustion to be a "futile exercise because the agency does not have jurisdiction to review" constitutional claims); *In re Indefinite Det. Cases*, 82 F. Supp. 2d 1098, 1099 (C.D. Cal. 2000) (same).

**PARTIES**

14. Kai Wang is a male citizen and national of the People's Republic of China who entered the United States on or about July 24, 2024, and has remained in the country since. See Affidavit of Kai Wang ("Kai Wang Aff.") ¶ 2. DHS detained Kai Wang upon entry and released him from custody several days later with instructions to report to ICE. Id. ¶ 2-3. Kai Wang established a life in California, obtained employment authorization and a Social Security number, and worked lawfully. Id. ¶ 4. Prior to his second detention he was gainfully employed as an assistant hairdresser at a hair salon in San Gabriel, California.

15. James JANECHA is the Warden of the Adelanto ICE Processing Center and Jaime RIOS is the Field Office Director, Adelanto, Office of Detention and Removal, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security. In his official capacity, he is the legal custodian of Kai Wang.

16. Respondent Todd M. LYONS is the Acting Director of ICE and is named in his official capacity. Among other things, ICE is responsible for the administration and enforcement of the immigration laws, including the removal of noncitizens. In his official capacity as head of ICE, he is the legal custodian of Kai Wang.

17. Respondent Markwayne MULLIN is the Secretary of DHS and is named in his official capacity. DHS is the federal agency that encompasses ICE, which is responsible for administering and enforcing the INA and all other laws related to the immigration of noncitizens. In the capacity as Secretary, Respondent Mullin has responsibility for the administration and enforcement of the immigration and naturalization laws pursuant to section 402 of the Homeland Security Act of 2002, 107 Pub. L. No. 296, 116 Stat. 2135 (Nov. 25, 2002); see also 8 U.S.C. § 1103(a). Respondent Mullin is the ultimate legal custodian of Kai Wang.

18. Respondent Todd BLANCHE is the Acting Attorney General of the United States and the most senior official in the U.S. Department of Justice (DOJ) and is named in his official capacity. He has the authority to interpret immigration laws and adjudicate removal cases. The Attorney General delegates this responsibility to the EOIR, which administers the immigration courts and the BIA.

## FACTUAL ALLEGATIONS

19. Since mid-May 2025, DHS has initiated an aggressive new enforcement campaign targeting people who are in regular removal proceedings in immigration court, many of whom have pending applications for asylum or other relief. This “coordinated operation” is “aimed at dramatically accelerating deportations” by arresting people at the courthouse or at the ICE office

and placing them into expedited removal. Arelis R. Hernández & Maria Sacchetti, *Immigrant Arrests at Courthouses Signal New Tactic in Trump's Deportation Push*, Wash. Post, May 23, 2025, https://www.washingtonpost.com/immigration/2025/05/23/immigration-court-arrests-ice-trump/; *see also* Hamed Aleaziz, Luis Ferré-Sadurní, & Miriam Jordan, *How ICE is Seeking to Ramp Up Deportations Through Courthouse Arrests*, N.Y. Times, May 30, 2025, https://www.nytimes.com/2025/05/30/us/politics/ice-courthouse-arrests.html. The Trump administration implemented a policy to drastically increase immigration arrests to a target of at least 3,000 per day. According to White House officials like Stephen Miller, this directive prioritized arrest numbers over the individuals' criminal history, encouraging agents to conduct mass round-ups in public spaces rather than targeted investigations.

20. As a result, arrests of non-citizens with no criminal record surged by over 800%, and two-thirds of those deported had no criminal history. This focus on quantity over public safety led to a new and aggressive tactic: systematically arresting immigrants at courthouses and ICE appointments, regardless of the status of their legal cases. This has created a climate of fear, discouraging people from attending their mandatory hearings or ICE appointments.

21. In addition, individuals are now held for extended periods, sometimes days, in temporary holding cells that are not designed for overnight or prolonged detention, often under inhumane conditions. Government officials have justified these harsh conditions not as a matter of necessity, but as an intentional deterrent, which is not a constitutionally permissible reason for detention.

22. Moreover, given recent BIA decisions in *Matter of Q. Li*, 29 I&N Dec. 66 (B.I.A. 2025) and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), all noncitizens apprehended within the interior of the U.S. who allegedly entered without admission or inspection have been denied bond hearings. While the U.S. District Court for the Central District of California recently certified a nationwide class of noncitizens denied by DHS and denied bond hearings for having entered without admission or inspection and granted declaratory relief declaring that

members of the class are entitled to bond hearings, practitioners across the nation are reporting that bonds are still being denied regularly. *See Lazaro Maldonado Bautista v Ernesto Santacruz, Jr.,* 5:25-cv-01873, (C.D. Cal.). See 5:25-cv-01873.

23. The government's new campaign is also a significant shift from the previous DHS practice of re-detaining noncitizens only after a material change in circumstances. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), aff'd sub nom. *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018), (describing prior practice).

24. Kai Wang fled China in 2024 as a result of the persecution he suffered there and his fear of further persecution. On or about July 24, 2024, Kai Wang came into immigration custody immediately after crossing the border into the United States, through the Mexican border, and presented himself so that he could apply for asylum. Kai Wang Aff. ¶ 2. DHS held Kai Wang in its custody for several days before determining that he is not a danger to the community nor a flight risk and releasing him from custody. See Kai Wang Aff. ¶ 2-3.

25. Upon his release from DHS custody in July 2024, Kai Wang complied with all instructions provided by immigration authorities. DHS released him without requiring him to post a bond, issued him a Notice to Appear, and instructed him to report to the ICE office, which he did on August 18, 2026. Id. ¶ 3, 6; see Attachment 3 (Notice to Appear).

26. During his time in the community, Kai Wang took affirmative steps to stabilize his life and pursue lawful status in the United States. He retained an immigration attorney, filed an application for asylum, withholding of removal, and protection under the Convention Against Torture, and obtained employment authorization and a Social Security number, with which he worked lawfully as an assistant hairdresser in San Gabriel, California. Id. ¶ 4. He completed his biometrics appointment on December 9, 2024. See Attachment 2 (I-589 Fingerprint Notices). He appeared at every hearing before the Immigration Court, and his case remains pending, with an individual merits hearing scheduled for March 9, 2028, before Immigration Judge Timothy R. Everett. Kai Wang Aff. ¶ 4; see Attachment 1 (EOIR Automated Case Information). Kai Wang

has been arrested on one prior occasion, and that case was dismissed; he has never been convicted of any crime in this country. Kai Wang Aff. ¶ 5.

27. On August 18, 2026, at approximately 8:30 a.m., when Kai Wang reported as directed to the ICE office in Downtown Los Angeles, he was arrested by ICE and taken into custody, without prior notice or warning. Kai Wang showed the ICE officials the police paperwork demonstrating that his one prior case had been dismissed; the officials kept that paperwork and arrested him anyway. Id. ¶ 6. Kai Wang was stunned and terrified, as he had no reason to anticipate that he could be re-detained after his release from ICE custody without any reason. Following his arrest, Kai Wang was transported to the Adelanto ICE Processing Center. Id. ¶ 7.

*28.* Since his detention, Kai Wang has suffered significant emotional and physical hardship. He reports feeling sad and depressed, suffering from depression, and sleeping very poorly. Id. ¶ 8. This is the first petition for a writ of habeas corpus that Kai Wang has been able to file. Id. ¶ 9. He now seeks release so that he may continue complying with supervision and pursue his asylum case. Id. ¶ 10-11.

29. Currently, his application for asylum, withholding of removal, and protection under the Convention Against Torture remains pending before the Immigration Court, with an individual merits hearing scheduled for March 9, 2028, before Immigration Judge Timothy R. Everett. See Attachment 1 (EOIR Automated Case Information).

**LEGAL ARGUMENT**

30. Kai Wang's removal proceedings before the Immigration Judge are governed by INA § 240 ("section 240 proceedings"). Section 240 proceedings provide important statutory protections, including hearings before an Immigration Judge.*See* 8 U.S.C. § 1229a(a)(1), (a)(4).

31. In Kai Wang's particular circumstances, the Due Process Clause of the Constitution makes it unlawful for Respondents to re-arrest him without first providing a pre-deprivation hearing before a neutral decision maker to determine whether circumstances have materially changed since

his release from custody in July 2024, such that detention would now be warranted on the basis that he is a danger or a flight risk by clear and convincing evidence.

32. By statute and regulations, ICE has the ability to unilaterally revoke any noncitizen's immigration bond determination or parole, and re-arrest the noncitizen at any time. 8 U.S.C. § 1226(b); 8 C.F.R. § 236.1(c)(9). Notwithstanding the breadth of the statutory language granting ICE the power to revoke an immigration bond "at any time," 8 U.S.C. 1226(b), in *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981), the BIA has recognized an implicit limitation on ICE's authority to re-arrest noncitizens. There, the BIA held that "where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance." *Id*. In practice, DHS "requires a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia*, 280 F. Supp. 3d at 1197 (emphasis added). The Ninth Circuit has also assumed that, under *Matter of Sugay*, ICE has no authority to re-detain an individual absent changed circumstances. *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) ("Thus, absent changed circumstances … ICE cannot redetain Panosyan.").

33. ICE has further limited its authority as described in *Sugay*, and "generally only re- arrests [noncitizens] pursuant to § 1226(b) after a material change in circumstances." *Saravia*, 280 F. Supp. 3d at 1197, aff'd sub nom. Saravia for A.H., 905 F.3d 1137 (quoting Defs.' Second Supp. Br. at 1, Dkt. No. 90) (emphasis added). Thus, under BIA case law and ICE practice, ICE may re-arrest a noncitizen who had been previously released on bond only after a material change in circumstances. *See Saravia*, 280 F. Supp. 3d at 1176; *Matter of Sugay*, 17 I&N Dec. at 640.

34. ICE's power to re-arrest a noncitizen who is at liberty following a release from custody is also constrained by the demands of due process. *See Hernandez,* 872 F.3d at 981 ("the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process"). *See also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (Due Process requires pre-deprivation hearing before revocation of probation); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)

(same, in parole context). Petitioner's release from custody in July 2024 and his ties to his community provide him with a protected liberty interest. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963 (N.D. Cal. Nov. 22, 2019).

35. Federal district courts in California have repeatedly recognized that the demands of due process and the limitations on DHS's authority to revoke a noncitizen's release from custody set out in DHS's stated practice and *Matter of Sugay* both require a pre-deprivation hearing for a noncitizen on ICE's supervision, like Kai Wang before ICE re-detains him. *See, e.g., Meza v. Bonnar*, 2018 WL 2554572 (N.D. Cal. June 4, 2018); *Ortega v. Bonnar*, 415 F. Supp. 3d 963 (N.D. Cal. 2019); *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *3-4 (N.D. Cal. May 6, 2022) (Petitioner would suffer irreparable harm if re-detained, and required notice and a hearing before any re-detention); *Enamorado v. Kaiser*, No. 25-CV-04072-NW, 2025 WL 1382859, at *3 (N.D. Cal. May 12, 2025) (temporary injunction warranted preventing re-arrest at plaintiff's ICE interview when he had been on bond for more than five years). *See also Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, *4 (E.D. Cal. Mar. 3, 2025) (holding the Constitution requires a hearing before any re-arrest).

**I. Petitioner Has a Protected Liberty Interest in His Conditional Release**

37. The Due Process Clause protects Kai Wang's liberty from immigration custody:"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

38. Since July 2024, Kai Wang exercised that freedom under ICE's order releasing him from custody. As he was released from custody, he retains a weighty liberty interest under the Due Process Clause of the Fifth Amendment in avoiding unlawful re-incarceration. *See Young v. Harper*,

520 U.S. 143, 146-47 (1997); *Gagnon*, 411 U.S at 781-82; *Morrissey*, 408 U.S. at 482- 483. Respondents created a reasonable expectation that Kai Wang would be permitted to live and work in the United States without being subject to arbitrary arrest and removal.

39. This reasonable expectation creates constitutionally protected liberty and property interests. *Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on policies and practices may establish a legitimate claim of entitlement to a constitutionally-protected interest); *see also Texas v. United States*, 136 S. Ct. 2271 (2016) (explaining that "DACA involve[s] issuing benefits" to certain applicants). These benefits are entitled to constitutional protections no matter how they may be characterized by Respondents. *See, e.g., Newman v. Sathyavaglswaran*, 287 F.3d 786, 797 (9th Cir. 2002) ("[T]he identification of property interests under constitutional law turns on the substance of the interest recognized, not the name given that interest by the state or other independent source.") (internal quotations omitted).

40. In *Morrissey*, the Supreme Court examined the "nature of the interest" that a parolee has in "his continued liberty." 408 U.S. at 481-82. The Court noted that, "subject to the conditions of his parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id* at 482. The Court further noted that "the parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id*. The Court explained that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others." *Id*. In turn, "[b]y whatever name, the liberty is valuable and must be seen within the protection of the [Fifth] Amendment." *Id* at 482.

41. This basic principle—that individuals have a liberty interest in their conditional release—has been reinforced by both the Supreme Court and the circuit courts on numerous occasions. *See, e.g., Young v. Harper*, 520 U.S. at 152 (holding that individuals placed in a pre-parole program created to reduce prison overcrowding have a protected liberty interest requiring pre-deprivation process); *Gagnon v. Scarpelli*, 411 U.S. at 781-82 (holding that individuals released

on felony probation have a protected liberty interest requiring pre-deprivation process). As the First Circuit has explained, when analyzing the issue of whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). See also, e.g., *Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017) ("a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated") (citing *Young*, 520 U.S. at 152, Gagnon, 411 U.S. at 782, and *Morrissey*, 408 U.S. at 482).

42. In fact, it is well-established that an individual maintains a protectable Liberty interest even where the individual obtains liberty through a mistake of law or fact. *See id.; Gonzalez-Fuentes*, 607 F.3d at 887; *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (noting that due process considerations support the notion that an inmate released on parole by mistake, because he was serving a sentence that did not carry a possibility of parole, could not be re-incarcerated because the mistaken release was not his fault, and he had appropriately adjusted to society, so it "would be inconsistent with fundamental principles of liberty and justice" to return him to prison) (internal quotation marks and citation omitted).

43. Here, when this Court compares the specific release in Kai Wang's case "with the liberty interest in parole as characterized by *Morrissey*," they are strikingly similar. *See Gonzalez-Fuentes*, 607 F.3d at 887. Just as in *Morrissey*, Kai Wang's release "enables him to do a wide range of things open to persons'" who have never been in custody or convicted of any crime, including to live at home, practice his faith, care for his child, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482.

**II. Petitioner's Liberty Interest Mandates a Hearing Before Any Re-Arrest or Revocation of Release from Custody**

44. Kai Wang asserts that, here, (1) where his detention would be civil; (2) where he has been at liberty for more than two years; (3) where no change in circumstances exist that would justify his lawful detention; and (4) where the only circumstance was ICE's move to arrest as many people as possible because of the new administration, due process mandates that he be released from his unlawful custody and receive notice and a hearing before a neutral adjudicator prior to any re-arrest or revocation of his custody release.

45. "Adequate, or due, process depends upon the nature of the interest affected. The more important the interest and the greater the effect of its impairment, the greater the procedural safeguards the [government] must provide to satisfy due process." *Haygood v. Younger*, 769 F.2d 1350, 1355-56 (9th Cir. 1985) (en banc) (citing *Morrissey*, 408 U.S. at 481-82). This Court must "balance [Kai Wang's] liberty interest against the [government's] interest in the efficient administration of" its immigration laws in order to determine what process he is owed to ensure that ICE does not unconstitutionally deprive him of his liberty. *Id at* 1357. Under the test set forth in *Mathews v. Eldridge*, this Court must consider three factors in conducting its balancing test: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Haygood*, 769 F.2d at 1357 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Several district courts have applied the *Mathews* factors in similar cases, and found that those in Petitioner's position, noncitizens granted the liberty of release pending removal proceedings, have due process rights. *See e.g., Calderon v. Kaiser*, No. 25-CV-06695-AMO, 2025 WL 2430609, at *3 (N.D. Cal. Aug. 22, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *5 (N.D. Cal. Aug. 21, 2025); *Pinchi v. Noem*, No. 5:25- CV-05632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025);

*Hernandez Nieves v. Kaiser*, No. 25-CV-06921-LB, 2025 WL 2533110, at *4 (N.D. Cal. Sept. 3, 2025).

46. The Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Only in a "special case" where post-deprivation remedies are "the only remedies the State could be expected to provide" can post-deprivation process satisfy the requirements of due process. *Zinermon*, 494 U.S. at 985. Moreover, only where "one of the variables in the Mathews equation—the value of pre-deprivation safeguards—is negligible in preventing the kind of deprivation at issue" such that "the State cannot be required constitutionally to do the impossible by providing pre-deprivation process," can the government avoid providing pre-deprivation process. *Id*.

47. Because, in this case, ICE is required to release Kai Wang from his unlawful custody and provide Kai Wang with notice and a hearing prior to any re-incarceration and revocation of his liberty. *See Morrissey*, 408 U.S. at 481-82; *Haygood*, 769 F.2d at 1355-56; *Jones*, 393 F.3d at 932; *Zinermon*, 494 U.S. at 985; *see also Youngberg v. Romeo*, 457 U.S. 307, 321-24 (1982); *Lynch v. Baxley*, 744 F.2d 1452 (11th Cir. 1984) (holding that individuals awaiting involuntary civil commitment proceedings may not constitutionally be held in jail pending the determination as to whether they can ultimately be recommitted). Under *Mathews*, the balance weighs heavily in favor of Kai Wang's liberty and requires a pre-deprivation hearing before a neutral adjudicator.

**III. Petitioner's Private Interest in His Liberty is Profound**

48. Under *Morrissey* and its progeny, individuals conditionally released from serving a criminal sentence have a liberty interest that is "valuable." *Morrissey*, 408 U.S. at 482. In addition, the principles espoused in Hurd and Johnson—that a person who is in fact free of physical confinement, even if that freedom is lawfully revocable, has a liberty interest that entitles him to constitutional due process before he is re-incarcerated—apply with even greater force to individuals like Kai Wang, who have been released pending civil removal proceedings,

rather than parolees or probationers who are subject to incarceration as part of a sentence for a criminal conviction. Parolees and probationers have a diminished liberty interest given their underlying convictions. *See, e.g., U.S. v. Knights*, 534 U.S. 112, 119 (2001); *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987). Nonetheless, even in the criminal parolee context, the courts have held that the parolee cannot be re-arrested without a due process hearing in which they can raise any claims they may have regarding why their re-incarceration would be unlawful. See Gonzalez-Fuentes, 607 F.3d at 891-92; Hurd, 864 F.3d at 683. Thus, Kai Wang retains a truly weighty liberty interest even though he is under conditional release.

49. What is at stake in this case for Kai Wang is one of the most profound individual interests recognized by our legal system: whether ICE may unilaterally nullify a prior decision releasing him from custody and to take away—without a lawful basis—his physical freedom, i.e., his "constitutionally protected interest in avoiding physical restraint." *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) (internal quotation omitted). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). See also *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Cooper v. Oklahoma*, 517 U.S. 348 (1996).

50. Thus, there is a clear profound private interest at stake in this case, which must be weighed heavily when determining what process he is owed under the Constitution. *See Mathews*, 424 U.S. at 334-35.

**IV. The Government's Interest in Re-Incarcerating Petitioner Without a Hearing is Low and the Burden on the Government to Refrain from Re-Arresting Him Unless and Until He is Provided a Hearing That Comports with Due Process is Minimal**

51. The government's interest in detaining Kai Wang without a due process hearing is low, and when weighed against Kai Wang's significant private interest in his liberty, the scale tips sharply in favor of enjoining Respondents to release Kai Wang from his unlawful custody

and refrain from re-arresting Kai Wang unless and until the government demonstrates by clear and convincing evidence that he is a flight risk or danger to the community. It becomes abundantly clear that the *Mathews* test favors Kai Wang when the Court considers that the process he seeks—notice and a hearing regarding whether he has violated any conditions of his release, and, if so, providing Kai Wang with a hearing before this Court (or a neutral decision-maker) to determine whether there is clear and convincing evidence that Kai Wang is a flight risk or danger to the community would impose only a *de minimis* burden on the government, because the government routinely provides this sort of hearing to individuals like Kai Wang

52. As immigration detention is civil, it can have no punitive purpose. The government's only interest in holding an individual in immigration detention can be to prevent danger to the community or to ensure a noncitizen's appearance at immigration proceedings. *See Zadvydas*, 533 U.S. at 690. In this case, the government cannot plausibly assert that it has any lawful basis for detaining Kai Wang, who has lived at liberty complying with the conditions of his release since July 2024.

53. ICE determined Kai Wang not to be a danger to the community or a flight risk in July 2024 and has done nothing to undermine that determination. To the contrary, he complied with the terms of his release. *See Morrissey*, 408 U.S. at 482 ("'It is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions on his release, than to his mere anticipation or hope of freedom'") (quoting *United States ex rel. Bey v. Connecticut Board of Parole*, 443 F.3d 1079, 1086 (2d Cir. 1971)).

54. It is difficult to see how the government's interest in ensuring his presence at the moment of removal has materially changed since he was released in July 2024. The government's interest in detaining Kai Wang at this time is therefore low. That ICE has a new policy to make a minimum number of arrests each day under the new administration does not

constitute a material change in circumstances or increase the government's interest in detaining him.

55. Moreover, the "fiscal and administrative burdens" that his immediate release and a lawful pre-detention hearing would impose is nonexistent in this case. *See Mathews*, 424 U.S. at 334-35. Kai Wang does not seek a unique or expensive form of process, but rather a routine hearing regarding whether his order of release should be revoked and whether he should be re-incarcerated.

56. As the Ninth Circuit noted in 2017, which remains true today, "[t]he costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million." *Hernandez*, 872 F.3d at 996. ICE's unlawful action of placing him in custody is more of a financial burden than releasing him and providing a pre-custody hearing before any future re-arrest occurs.

57. In addition, providing Kai Wang with a hearing before this Court (or a neutral decisionmaker) regarding release from custody is a routine procedure that the government provides to those in immigration jails on a daily basis. At that hearing, the Court would have the opportunity to determine whether circumstances have changed sufficiently to justify his re-arrest. But there is no justifiable reason to re-incarcerate Kai Wang prior to such a hearing taking place. As the Supreme Court noted in *Morrissey*, even where the State has an "overwhelming interest in being able to return [a parolee] to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole . . . the State has no interest in revoking parole without some informal procedural guarantees." *Morrissey*, 408 U.S. at 483.

58. Releasing Kai Wang from unlawful custody and enjoining him re-arrest until ICE (1) moves for a pre-deprivation bond hearing before an Immigration Judge and (2) demonstrates by clear and convincing evidence that Kai Wang is a flight risk or danger to the community. *Hernandez*, 872 F.3d at 996.

**V. Without a Due Process Hearing Prior to Any Re-Arrest, the Risk of an Erroneous Deprivation of Liberty is High, and Process in the Form of a Constitutionally Compliant Hearing Where ICE Carries the Burden Would Decrease That Risk**

59. Releasing Kai Wang from unlawful custody and providing Kai Wang a pre-deprivation hearing would decrease the risk of Kai Wang being erroneously deprived of his liberty. Before Kai Wang can be lawfully detained, he must be provided with a hearing before a neutral adjudicator at which the government is held to show that there has been sufficiently changed circumstances such that ICE's July 2024 release from custody determination should be altered or revoked because clear and convincing evidence exists to establish that Kai Wang is a danger to the community or a flight risk.

61. On August 18, 2026, Kai Wang did not receive this protection. Instead, he was detained by ICE, without notice, despite having complied with every condition of his release and having appeared at every hearing before the Immigration Court, and there have been no material changes in his circumstances.

62. By contrast, the procedure Kai Wang seeks—a hearing in front of a neutral adjudicator at which the government must prove by clear and convincing evidence that circumstances have changed to justify his detention before any re-arrest—is much more likely to produce accurate determinations regarding factual disputes, such as whether a particular occurrence constitutes a "changed circumstance." *See Chalkboard, Inc. v. Brandt*, 902 F.2d 1375, 1381 (9th Cir. 1989) (when "delicate judgments depending on credibility of witnesses and assessment of conditions not subject to measurement" are at issue, the "risk of error is considerable when just determinations are made after hearing only one side"). "A neutral judge is one of the most basic due process protections." *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), abrogated on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). The Ninth Circuit has noted that the risk of an erroneous deprivation of liberty under *Mathews* can be decreased where a neutral decisionmaker, rather than ICE alone, makes custody determinations. *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1091-92 (9th Cir. 2011).

63. Due process also requires consideration of alternatives to detention at any custody determination hearing that may occur. The primary purpose of immigration detention is to ensure a noncitizen's appearance during removal proceedings. *Zadvydas*, 533 U.S. at 697. Detention is not reasonably related to this purpose if there are alternatives to detention that could mitigate risk of flight. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979). Accordingly, alternatives to detention must be considered in determining whether Kai Wang's reincarceration is warranted.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Violation of Procedural Due Process Under U.S. Const. Amend. V

64. Kai Wang re-alleges and incorporates herein by reference, as is set forth fully herein, the allegations in all the preceding paragraphs.

65. The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V.

66. Kai Wang has a vested liberty interest in his lawful conditional release. Due Process does not permit the government to strip him of that liberty without a hearing before this Court. *See Morrissey*, 408 U.S. at 487-488.

67. The Court must therefore order that ICE release Kai Wang from his current unlawful custody.

68. Prior to any re-arrest, the government must provide him with a hearing before a neutral adjudicator. At the hearing, the neutral adjudicator would evaluate, *inter alia*, whether clear and convincing evidence demonstrates, taking into consideration alternatives to detention, that Kai Wang is a danger to the community or a flight risk, such that his reincarceration is warranted. During any custody determination hearing that occurs, this Court or, alternatively, a neutral adjudicator must consider alternatives to detention when determining whether Kai Wang's re-incarceration is warranted.

**SECOND CLAIM FOR RELIEF**

**Violation of Substantive Due Process Under U.S. Const. Amend. V**

69. Kai Wang re-alleges and incorporates herein by reference, as is set forth fully herein, the allegations in all the preceding paragraphs.

70. The Due Process Clause of the Fifth Amendment forbids the government from depriving individuals of their right to be free from unjustified deprivations of liberty. U.S. Const. amend. V.

71. Kai Wang has a vested liberty interest in his conditional release. Due Process does not permit the government to strip him of that liberty without it being tethered to one of the two constitutional bases for civil detention: to mitigate against the risk of flight or to protect the community from danger. Since July 2024, Kai Wang has pursued his application for asylum, withholding of removal, and protection under the Convention Against Torture, has appeared at every hearing, and awaits an individual merits hearing scheduled for March 9, 2028. He is neither a flight risk nor a danger. Re-arresting him now would be punitive and violate his constitutional right to be free from the unjustified deprivation of his liberty.

72. For these reasons, Kai Wang's continued unlawful custody and any subsequent re-arrest without first being provided a pre-deprivation hearing would violate the Constitution.

73. The Court must therefore order that he be released from custody.

74. The Court must order the government to not re-arrest him in any subsequent action without a hearing before a neutral adjudicator. At the hearing, the neutral adjudicator would evaluate, *inter alia*, whether clear and convincing evidence demonstrates, taking into consideration alternatives to detention, that Kai Wang is a danger to the community or a flight risk, such that his re-incarceration is warranted. During any custody determination hearing that occurs, this Court or,

in the alternative, a neutral adjudicator must consider alternatives to detention when determining whether Kai Wang's re-incarceration is warranted.

**PRAYER FOR RELIEF**

WHEREFORE, Kai Wang prays that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Declare that ICE's August 18, 2026 apprehension and detention of Kai Wang was an unlawful exercise of authority because the ICE officer provided no reason that he presents a danger to the community or is a flight risk;

(3) Order ICE to immediately release Kai Wang from his unlawful detention;

(4) Enjoin re-arresting Kai Wang unless and until a hearing can be held before a neutral adjudicator to determine whether his re-incarceration would be lawful because the government has shown that he is a danger or a flight risk by clear and convincing evidence;

(5) Award reasonable costs and attorney fees; and

(6) Grant such further relief as the Court deems just and proper.

Respectfully submitted this August 19, 2026.

By counsel,

/s/ Hovhannes Bayburtski

Hovhannes Bayburtski, Esq.
Attorney for Petitioner
CA Bar No. 348506
12400 Ventura Blvd, #411
Studio City, CA 91604
Telephone:(310)901-9112
Email: hovbaylaw@gmail.com; globallawusa@gmail.com

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am one of Petitioner's attorneys. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Executed on August 19, 2026, in Studio City, CA.

/s/ Hovhannes Bayburtski
Hovhannes Bayburtski, Esq.
Attorney for Petitioner